## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| **CHRISTINE DUCKETT, as Special Administrator of the Estate of JEFFREY DUCKETT, Deceased** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **Civil Action No.:** _____ |
| **v.** | ) ) | **JURY TRIAL DEMANDED** |
| | ) | FILED: SEPTEMBER 4, 2008 |
| **GENERAL ELECTRIC COMPANY, GE HEALTHCARE, INC., and GE HEALTHCARE BIO-SCIENCES CORP.,** | ) ) ) ) | 08CV5055 JUDGE HART MAGISTRATE JUDGE COLE |
| **Defendants.** | | AO |

## NOTICE OF REMOVAL

In accordance with 28 U.S.C. §§ 1332, 1441, and 1446, Defendants General Electric Company, GE Healthcare Inc. (improperly named as GE Healthcare, Inc.) and GE Healthcare Bio-Sciences Corp. (collectively, "the GE Defendants") hereby remove this civil action from the Circuit Court of Cook County, Illinois, to the United States District Court of the Northern District of Illinois, Eastern Division, and in support of that removal state as follows:

### A.    The State Court Action

1.      On or about July 24, 2008, a civil action was commenced against the GE Defendants in the Circuit Court of Cook County, Illinois, County Department, Law Division, captioned Christine Duckett, as Special Administrator of the Estate of Jeffrey Duckett, Deceased v. General Electric Company, et al. (No. 08-L-8101) (the "State Court Action").

2.      Among other things, Plaintiff's complaint asserts claims for wrongful death and recovery under the Illinois Survival Act.  See Complaint ¶¶ 46-54 (attached hereto as Exhibit A).

3.      Plaintiff generally alleges that her decedent, Jeffrey Duckett, developed a disease known as Nephrogenic Systemic Fibrosis ("NSF") following the administration of "Omniscan™

(gadodiamide) on or about November 18, 2005, in connection with magnetic resonance imaging (MRI) at Edward Hospital and Health Center, 801 South Washington Street, Naperville, Illinois 60540." *Id.* at ¶¶ 22, 24.

**B.      Pleading and Process**

4.      The GE Defendants were served with the Summons and Complaint in the State Court Action on August 5, 2008.  No further proceedings have occurred in that action.  A copy of the Complaint is attached as Exhibit A.

**C.      Amount in Controversy**

5.      The Complaint seeks various damages, including for Plaintiff's own pecuniary losses and those of her children, for medical bills and funeral expenses, and for her decedent's personal injuries, pain and suffering, disfigurement, and loss of life, among other things.  Complaint (Ex. A) at ¶¶ 47, 50-51, 54.

6.      Upon information and belief, Plaintiff's complaint seeks damages that, if proven, would more likely than not exceed $75,000, exclusive of interest and costs, as required by 28 U.S.C. § 1332(a).

**D.      Basis for Removal – Diversity Jurisdiction**

7.      This Court has original subject matter jurisdiction over this action because there is complete diversity among all properly joined and served parties and the amount in controversy exceeds $75,000, pursuant to 28 U.S.C. § 1332.

**E.      Diversity Between Plaintiffs and Defendants**

8.      As verified in the attached correspondence with Plaintiff's counsel's office, Costello, McMahon & Burke, Plaintiff is a resident of the State of Illinois, as was her decedent before his death. (Email from Cari Denney to Jennifer Foster (Aug. 28, 2008)) (attached hereto as Exhibit

B). Therefore, Plaintiff is a citizen of Illinois for purposes of federal diversity jurisdiction. *See* 28 U.S.C. § 1332(a).

9.      Defendant General Electric Company is, and has been at all relevant times, a corporation incorporated under the laws of the State of New York with its principal place of business at 3135 Easton Turnpike, Fairfield, Connecticut, 06828. Pursuant to 28 U.S.C. § 1332, General Electric Company is a citizen of both the State of New York and the State of Connecticut. General Electric Company is the ultimate parent company of GE Healthcare Inc. and GE Healthcare Bio-Sciences Corp.

10.     GE Healthcare Inc. is, and has been at all relevant times, a corporation incorporated under the laws of the State of Delaware with its principal place of business at 101 Carnegie Center, Princeton, New Jersey, 08540. Pursuant to 28 U.S.C. § 1332, GE Healthcare Inc. is a citizen of both the State of Delaware and the State of New Jersey. GE Healthcare Inc. distributes, sells and markets Omniscan$^{TM}$, the gadolinium-based contrast agent at issue, in the United States in accordance with FDA rules and regulations. General Electric Company is the ultimate parent company of GE Healthcare Inc.

11.     GE Healthcare Bio-Sciences Corp. is, and has been at all relevant times, a Delaware corporation with its principal place of business at 800 Centennial Avenue, Piscataway, New Jersey, 08855. Pursuant to 28 U.S.C. § 1332, GE Healthcare Bio-Sciences Corp. is a citizen of both the State of Delaware and the State of New Jersey. General Electric Company is the ultimate parent company of GE Healthcare Bio-Sciences Corp.

12.     Given the diversity of citizenship, the GE Defendants may properly remove this action pursuant to 28 U.S.C. § 1441(a).

13.     For the foregoing reasons, this Court has jurisdiction over this matter.

**F.    Notice Given**

14.    Pursuant to 28 U.S.C. § 1446(d), the GE Defendants have filed this Notice of Removal promptly with the Circuit Court of Cook County, and have served it forthwith on Plaintiff.

**G.    Venue**

15.    The United States District Court for the Northern District of Illinois, Eastern Division, embraces the county in which the State Court Action is now pending, and therefore, this Court is a proper venue for this action.  28 U.S.C. §§ 93(a)(1), 1441(a).

**H.    Additional Discovery, Briefing and Argument**

16.    If any question arises as to the propriety of this removal, the GE Defendants request the opportunity to conduct discovery or brief any disputed issues and to present oral argument in support of their position that this case is properly removable.

**I.    Non-Waiver of Defenses**

17.    Nothing in this Notice of Removal or related documents shall be interpreted as a waiver or relinquishment of the GE Defendants' right to assert any defense or affirmative response in this proceeding.

**J.    Conclusion**

18.    Based on the foregoing, the GE Defendants respectfully request that this action, now pending in the Circuit Court of Cook County, be removed to this Court and that this action be placed upon the docket of this Court for further proceedings as though originally instituted in this Court.

Dated: September 4, 2008

Respectfully Submitted,

/s/ Maja C. Eaton

Maja C. Eaton
Jennifer A. Foster
**Sidley Austin LLP**
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000
meaton@sidley.com

Attorneys for Defendants General Electric
Company, GE Healthcare Inc., and GE Healthcare
Bio-Sciences Corp.

## CERTIFICATE OF SERVICE

I, Jennifer A. Foster, do hereby certify this 4th day of September, 2008, that I have served

a true and correct copy of the foregoing, by United States mail, properly addressed and first class

postage prepaid, to the following:

James P. Costello
Costello, McMahon & Burke
150 North Wacker Drive
Suite 3050
Chicago, IL 60606

**ATTORNEY FOR PLAINTIFF**

Dorothy Brown, Clerk of the Court
Circuit Court of Cook County
Richard J. Daley Center
50 West Washington Street
Suite 1001
Chicago, IL 60602

**CIRCUIT COURT CLERK, COOK COUNTY, ILLINOIS**

/s/ Jennifer A. Foster_____

Maja C. Eaton
Jennifer A. Foster
**Sidley Austin LLP**
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000
meaton@sidley.com

Attorneys for Defendants General Electric
Company, GE Healthcare Inc., and GE Healthcare
Bio-Sciences Corp.

# Exhibit A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

CHRISTINE DUCKETT, As Special            )
Administrator of the Estate of JEFFREY   )
DUCKETT, deceased,                       )
                                         )          2008L008101
          Plaintiff,                     )          CALENDAR/ROOM J
                                         )          TIME 00:00
          vs.                            )   No.    Product Liability
                                         )
GENERAL ELECTRIC COMPANY, GE             )
HEALTHCARE, INC. and GE HEALTHCARE       )
BIO-SCIENCES CORP,                       )
                                         )
          Defendants.                    )

## COMPLAINT AT LAW

NOW COMES the Plaintiff, CHRISTINE DUCKETT, Individually and as Special

Administrator of the Estate of JEFFREY DUCKETT, Deceased, and complaining of the Defendants,

GENERAL ELECTRIC COMPANY, GE HEALTHCARE, INC and GE HEALTHCARE BIO-

SCIENCES CORP., states as follows:

### COMMON ALLEGATIONS

Plaintiff alleges and incorporates by reference Paragraphs 1 through 53 in Counts I through III.

1.     That at all times relevant, Defendant, GENERAL ELECTRIC COMPANY, designed,

manufactured, distributed and sold, either directly or indirectly through third parties or related entities,

the prescription drug, Omniscan.

2.     That the Defendant, GE HEALTHCARE, INC., is a subsidiary of Defendant, GENERAL

ELECTRIC COMPANY. At all time relevant, Defendant, GE HEALTHCARE, INC., was engaged in

the business of designing, licensing, manufacturing, distributing, selling, marketing and/or introducing

into interstate commerce, either directly or indirectly through third parties or related entities, the

prescription drug, Omniscan.

3.    That the Defendant, GE HEALTHCARE BIO-SCIENCES CORP., is a subsidiary of Defendant, GENERAL ELECTRIC COMPANY. At all times relevant, Defendant, GE HEALTHCARE BIO-SCIENCES CORP., was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, the prescription drug, Omniscan.

4.    That Omniscan is an injectable paramagnetic contrast agent for magnetic resonance imaging and arteriography.  It contains the metal gadolinium which is highly toxic in its free state. Omniscan, the chemical name of which is gadolinium diethylenetriamine pentaacetic acid bismethylamide (gadodiamide), is represented by Defendants to be safely and effectively indicated for intravenous administration to facilitation the visualization with abnormal vascularity.

5.    That Omniscan (gadodiamide) was originally developed in the early 1990s by Salutar, Inc. which subsequently transferred the rights to Omniscan (gadodiamide) to Sterling Wintrhop, a subsidiary of Eastman Kodak Company.

6.    That in 1994, the diagnostic imaging division of Sterling Winthrop, which held the rights to Omniscan (gadodiamide), was sold to Hafslund Nycomed AS, a Norwegian company.

7.    That in 1997, Nycomed merged with Amersham International, a British company, and the resulting entity that held the rights to Omniscan (gadodiamide) was Amersham PLC.

8.    That in January of 2004, Defendant, GENERAL ELECTRIC COMPANY, purchased Amersham PLC, combined it with its own GE Medical Systems, and created a new subsidiary called GE Healthcare, Inc.

9.    That Omniscan (gadodiamide) is cleared from the body by glomerular filtration in the

kidneys.  As a result, it has prolonged half-life in patients with renal insufficiency and who, therefore, are at increased risk for adverse health effects in connection with Omniscan (gadodiamide) administration.

10.   That in pre-clinical safety assessment during which Omniscan (gadodiamide) was injected into laboratory animals, consistent patterns of toxicity including nephrogenic fibrotic changes in the skin and other body organs occurred.

11.   Despite these nephrogenic fibrotic changes and other data warranting caution and further evaluation, Omniscan (gadodiamide) was marketed and sold without appropriate clinical evaluation of the nephrotoxic effect of this drug on patients with renal insufficiency, without appropriate clinical evaluation of the propensity of this drug to produce nephrogenic fibrosis in humans, and without appropriate and effective warning with respect to either.

12.   At all times relevant hereto, Defendants knew or should have known about the significant health risk of Omniscan (gadodiamide) administration to patients with renal insufficiency, including but not limited to, the risk of nephrogenic fibrosis in the skin and other body organs.

13.   Nephrogenic Systemic Fibrosis (NSF), also known as Nephrogenic Fibrosing Dermopathy (NSD), has been reported in medical literature for at least the last decade.

14.   Prior to a decade ago, the group of symptoms known as NSF/NSD had been variously described as scleromyxedema, scleroderma, or other connective tissue diseases.  Regardless of the name ascribed to it, however, it has always been the case that this clinical entity now know as NSF/NSD develops only in patients with renal insufficiency who have been given an injection of gadolinium-type contrast agent such as Omniscan (gadodiamide).

15.   While there are gadolinium-type paramagnetic contrast agents available for administration

-3-

in the United States, greater than 90% of all patients who have been diagnosed with NSF/NSD have received injections of Omniscan (gadodiamide) in connection with magnetic resonance imaging or arteriography.

16.    Omniscan (gadodiamide) is chemically distinct from other gadolinium-type contrast agents in that it carries no molecular charge and is arranged in a linear structure with excess chelate such that it permits the release of free gadolinium ions and the extravasation of toxic gadolinium.

17.    NSF/NSD is predominately characterized by discoloration, thickening, tightening, and swelling of the skin within days or weeks after receiving the Omniscan (gadodiamide) injection. These fibrotic and edematous changes produce muscular weakness and inhibit flexion and extension of joints, resulting in contractures.  NSF/NSD often progresses to painful inhibition of the ability to use the arms, legs, hands, feet and other joints.  The skin changes that begin as darkened patches or plaques progress to a "woody" texture and are accompanied by burning, itching or severe pain in the areas of involvement. NSF/NSD also progresses to a fibrotic or scarring condition of other body organs such as the lungs, heart, liver and musculature, and that can inhibit the ability to function properly and may lead to death. NSF/NSD is a progressive disease for which there is no known cure.

18.    During the years that Defendants have manufactured, marketed and sold Omniscan (gadodiamide), there have been numerous case reports, studies, assessments, papers, and other clinical data that have described and/or demonstrated NSF/NSD in connection with the use of Omniscan (gadodiamide).

19.    Despite receipt of this information, Defendants have repeatedly failed to revise their package inserts, Material Safety Data Sheets, and other product related literature and to conduct appropriate post-marketing communications in order to convey adequate warnings for patients with renal

insufficiency.

20.    The Defendants have repeatedly and consistently failed to advise consumers and/or health providers of the causal relationship between Omniscan (gadodiamide) and NSF/NSD in patients with renal insufficiency.

21.    The Defendants have failed to take prompt, reasonable and effective measures to alert the appropriate members of the health care community and its patients, including but not limited to, renal patients, nephrologists and other physicians, radiologists administrators, technicians and hospital/radiology supply personnel, to the serious adverse health risks presented by Omniscan (gadodiamide) administration.

22.    As a result of Defendants' claim regarding the safety and effectiveness of Omniscan (gadodiamide), Plaintiff's decedent, Jeffrey Duckett, was administered Omniscan (gadodiamide) on or about November 18, 2005, in connection with magnetic resonance imaging (MRI) at Edward Hospital and Health Center, 801 South Washington Street, Naperville, Illinois 60540.

23.    Neither Plaintiff's decedent, JEFFERY DUCKETT, nor his prescribing physician, nor the performing radiologists or technicians were warned or cautioned by Defendants about the serious health risks presented by the administration of Omniscan (gadodiamide).

24.    Within a relatively short time after being administered Omniscan (gadodiamide), Plaintiff's decedent, JEFFREY DUCKETT, developed NSF/NFD, which was formally diagnosed in April, 2007.

25.    Prior to November 18, 2005, Defendants knew or should have known that the administration of Omniscan (gadodiamide) to patients with renal insufficiency created an increased risk to those consumers of serious, personal injury and death.

26.    Therefore, at the time Plaintiff's decedent, JEFFREY DUCKETT was administered

-5-

Omniscan (gadodiamide) on or about November 18, 2005, Defendants knew or should have known that the use of Omniscan (gadodiamide) created an increased risk of serious personal injury, or even death to consumers with renal insufficiency.

27.    As a direct and proximate result of being administered Omniscan (gadodiamide), Plaintiff's decedent, JEFFREY DUCKETT, died on April 18, 2007.

28.    That at all relevant times, despite the fact that Defendants knew or should have known of the serious health risks associated with the use of Omniscan (gadodiamide), Defendants failed to warn Plaintiff's decedent, JEFFREY DUCKETT and/or his health care providers of those serious risks.

29.    Had Plaintiff's decedent, JEFFREY DUCKETT, or his health care providers known the risks of injury and physical harm associated with Omniscan (gadodiamide), they would not have administered or consented to the administration of Omniscan (gadodiamide) and would have not been afflicted with NSF/NSD.

30.    The Omniscan (gadodiamide) manufactured, designed, distributed, supplied and/or placed in the stream of commerce by Defendants was defective in its manufacture and construction when it left the hands of the Defendants in that it deviated from product specifications, posing a serious risk of injury and death.

31.    The Omniscan (gadodiamide) manufactured and supplied by Defendants was defective in design or formulation in that, when it left the hands of the Defendants, the foreseeable risks of the product exceeded the benefits associated with its designs or formulation, or it was more dangerous than an ordinary consumer would expect.

32.    The foreseeable risks associated with the design or formulation of Omniscan (gadodiamide), include, but are not limited to, the fact that the design or formulation of Omniscan

(gadodiamide) is more dangerous that a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

33.    The Omniscan (gadodiamide) manufactured and supplied by Defendants was defective due to inadequate warning or instruction because Defendants knew or should have known that the product created a significant risks of serious bodily harm and death to consumers and they failed to adequately warn consumers and/or their health care providers of such risks.

34.    The Omniscan (gadodiamide) manufactured and supplied by Defendants was defective due to inadequate post-marketing warning or instruction because, after Defendants knew or should have known of the risk of serious bodily harm and death from the administration of Omniscan (gadodiamide), Defendants failed to provide an adequate warning to consumers and/or their health care providers of the product, knowing the product could cause serious injury and death.

35.    Defendants advised consumers and the medical community that Omniscan (gadodiamide) was safe for use.  Defendants failed to adequately test Omniscan (gadodiamide) with respect to its use by consumers with renal insufficiency.

36.    Had Defendants adequately tested the safety of Omniscan (gadodiamide) for use by consumers with renal insufficiency and disclosed those results to the medical community or the public, Plaintiff's decedent JEFFERY DUCKETT would not have been administered Omniscan (gadodiamide).

37.    Defendants made representations regarding the character or quality of Omniscan (gadodiamide), including representations that Omnicscan (gadodiamide) was safe.

38.    The Omnioscan (gadodiamide) manufactured and supplied by Defendants was defective in that, when it left the hands of Defendants, it did no conform to representations made by Defendants concerning the product.

-7-

39.    Plaintiff's decedent JEFFREY DUCKETT and/or his health care providers justifiably relied upon Defendants' representations regarding the Omniscan (gadodiamide) at the time it was administered to him.

40.    Because gadolinium is highly toxic and inherently dangerous and ultrahazardous to humans, Defendants had a duty to exercise the highest possible degree of care in the design, manufacture, sale and/or distribution of Omniscan (gadodiamide) in the stream of commerce, including the duty to assure that their product did no pose a significantly increased risk of bodily harm and adverse events.

41.    Defendants failed to exercise the highest possible degree of care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, and distribution of Omniscan (gadodiamide) into interstate commerce in that Defendants knew or should have known that the product was inherently dangerous and unltrahazardous to humans and caused such significant bodily harm or death and was not safe for administration to consumers.

42.    Defendants also failed to exercise the highest possible degree of care in the labeling of Omniscan (gadodiamide) and failed to issue to consumers and/or their health care providers adequate warnings of the risk of serious bodily injury or death due to the use of Omniscan (gadodiamide).

43.    Despite the fact that Defendants knew or should have known that Omnicscan (gadodiamide) posed a serious risk of bodily harm to consumers and was inherently dangerous and unltrahazardous to humans and particularly those with renal insufficiency, Defendants continued to manufacture and market Omniscan (gadodiamide) for administration to magnetic resonance imaging and arteriography patients with renal insufficiency.

44.    Defendants knew or should have known that consumers such as Plaintiff's decedent JEFFERY DUCKETT would foreseeably suffer injury as a result of Defendants' failure to exercise the

-8-

highest possible degree of care as described above.

45.    As a direct and proximate result of Defendants' use and control of toxic gadolinium, toxic gadolinium was injected and released into the body of Plaintiff's decedent JEFFERY DUCKETT.

## COUNT I - WRONGFUL DEATH

46.    That as a direct and proximate result of one or more of the foregoing defective and unreasonably dangerous conditions of said product, Plaintiff's decedent, JEFFREY DUCKETT, died on April 18, 2007.

47.    That Plaintiff's decedent, JEFFREY DUCKETT, left surviving his next of kin, including his wife and two minor children, all of whom have sustained pecuniary loss as a result of her death.

48.    That this cause of action is brought pursuant to Chapter 70, Illinois Revised Statutes, Sections 1 and 2 of the "Injuries Act," commonly known as the Illinois Wrongful Death Act, and is brought within two years of the date of the deceased's death.

49.    That Plaintiff, CHRISTINE DUCKETT, wife of the deceased, brings herewith the order of the Circuit Court of Cook County, appointing her as Special Administrator of the Estate of JEFFREY DUCKETT, Deceased, as evidence of her right to sue, said order is attached hereto and identified as Exhibit "A" to this Complaint at Law.

WHEREFORE, Plaintiff, CHRISTINE DUCKETT, As Special Administrator of the Estate of JEFFREY DUCKETT, deceased, asks judgment against the Defendants, GENERAL ELECTRIC COMPANY, GE HEALTHCARE, INC and GE HEALTHCARE BIO-SCIENCES CORP., in a fair and reasonable sum in excess of FIFTY THOUSAND ($ 50, 000.00) DOLLARS.

## COUNT II - SURVIVAL ACT

50.    That as a direct and proximate result of one or more of the foregoing defective and

-9-

unreasonably dangerous conditions of said product, Plaintiff's decedent, JEFFREY DUCKETT, sustained personal injury, incurred bills for medical and hospital treatment, was kept from attending to his ordinary affairs and duties, and suffered pain and suffering, disability, disfigurement, and the loss of a normal life through the date of his death on April 18, 2007.

51.    That Plaintiff's decedent, JEFFREY DUCKETT, left surviving his next of kin, including his wife and two minor children, all of whom have sustained pecuniary loss as a result of her death.

52.    That this cause of action is brought pursuant to Chapter 70, Illinois Revised Statutes, Sections 1 and 2 of the "Injuries Act," commonly known as the Illinois Wrongful Death Act, and is brought within two years of the date of the deceased's death.

53.    That Plaintiff, CHRISTINE DUCKETT, wife of the deceased, brings herewith the order of the Circuit Court of Cook County, appointing her as Special Administrator of the Estate of JEFFREY DUCKETT, Deceased, as evidence of her right to sue, said order is attached hereto and identified as Exhibit "A" to this Complaint at Law.

WHEREFORE, Plaintiff, CHRISTINE DUCKETT, As Special Administrator of the Estate of JEFFREY DUCKETT, deceased, asks judgment against the Defendants, GENERAL ELECTRIC COMPANY, GE HEALTHCARE, INC and GE HEALTHCARE BIO-SCIENCES CORP., in a fair and reasonable sum in excess of FIFTY THOUSAND ($ 50, 000.00) DOLLARS.

## COUNT III - FAMILY EXPENSE ACT

54.    That as a direct and proximate result of one or more of the foregoing defective and unreasonably dangerous conditions of said product, Plaintiff, CHRISTINA DUCKETT, as the lawful wife of Plaintiff's Decedent, JEFFREY DUCKETT, was caused to incur medical bills and funeral expenses in connection with the medical treatment and death of JEFFREY DUCKETT.

-10-

WHEREFORE, Plaintiff, CHRISTINE DUCKETT, Individually, asks judgment against the

Defendants, GENERAL ELECTRIC COMPANY, GE HEALTHCARE, INC and GE HEALTHCARE

BIO-SCIENCES CORP., in a fair and reasonable sum in excess of FIFTY THOUSAND ($ 50, 000.00)

DOLLARS.

Respectfully submitted,

Attorneys for Plaintiff

Costello, McMahon & Burke
Suite 3050
150 North Wacker Drive
Chicago, IL 60606
312/541-9700
COOK CO. ATTY ID No. 26146
IL ID No. 3122807
By: James P. Costello

·II·

**Exhibit B**

Page 1 of 2

**Brehm, Susan M.**

**From:** Cari Denney [cmbltd@yahoo.com]
**Sent:** Thursday, August 28, 2008 4:07 PM
**To:** Foster, Jennifer
**Subject:** Re: Duckett v. General Electric Company, et al. (No. 08 L 8101)

Ms. Foster-

I am sorry about not getting this taken care of sooner. Yes, Jeffrey and Christine Duckett are/were both citizens of the State of Illinois. Christine currenlty resides in Romeoville, IL, as did Jeffrey before he passed away.

Please let me know if this helps or if you need anything further.

Cari Denney
Senior Paralegal
Costello, McMahon, Burke & Murphy, Ltd.
150 North Wacker Drive, Suite 3050
Chicago, Illinois 60606
(312)541-9700

--- On Thu, 8/28/08, Foster, Jennifer <*jafoster@sidley.com*> wrote:

From: Foster, Jennifer <jafoster@sidley.com>
Subject: Duckett v. General Electric Company, et al. (No. 08 L 8101)
To: cmbltd@yahoo.com
Date: Thursday, August 28, 2008, 3:07 PM

Dear Cari,
I have been playing phone-tag with Mr. Costello for a couple of days now in regards to a request that I have in the Duckett v. General Electric Company, et al. case (No. 08 L 8101) that he filed in the Circuit Court of Cook County on July 24, 2008. I am one of the attorneys representing the GE defendants in this case and, as I indicated to Mr. Costello earlier this week, I need written verification that plaintiff Christine Duckett and her decedent, Jeffrey Duckett, are/were citizens of the State of Illinois. In Mr. Costello's voicemail to me of Tuesday, August 26, 2008, he indicated that Mrs. Duckett was, indeed, a citizen of Illinois and that Mr. Duckett received all treatment in

9/4/2008

Naperville and another southwestern suburb of Chicago that he could not remember off-hand. Can you or Mr. Costello please verify in writing that plaintiff and her decedent are, in fact, citizens of Illinois? If you could either fax or email me a letter verifying this citizenship, or confirm such citizenship by response to this email, I would greatly appreciate it.

Thanks in advance, and please feel free to contact me with questions or concerns,

**Jennifer A. Foster, Esq.**
Sidley Austin, LLP
One South Dearborn Street
Chicago, IL 60603
T: 312.853.3634
F: 312.853.7036
E: jafoster@sidley.com

IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this communication, including attachments, was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of avoiding any penalties that may be imposed on such taxpayer by the Internal Revenue Service. In addition, if any such tax advice is used or referred to by other parties in promoting, marketing or recommending any partnership or other entity, investment plan or arrangement, then (i) the advice should be construed as written in connection with the promotion or marketing by others of the transaction(s) or matter(s) addressed in this communication and (ii) the taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

*************************************************************************

This e-mail is sent by a law firm and may contain information that is privileged or confidential. If you are not the intended recipient, please delete the e-mail and any attachments and notify us immediately.

*************************************************************************

9/4/2008